Estate of David Bass v. Regions Bank. Mr. Coffman. Thank you, Your Honor. Good morning. May it please the Court, I'm Jason Coffman and I represent the plaintiff, the Estate of David Bass. I think recently . . . A lot of the issues in this case are the same as in the other one. The Midwest Feeders. I listened to it yesterday, Your Honor. My case is different. Oh, no. I know the two . . . Oh, I apologize. I was thinking of an oral argument that you did approximately a year ago with Midwest Feeders v. Regions Bank. All I'm saying is I don't think we have to hear the facts and the things like that all over again in the two. And I agree with you, Your Honor, although I disagree with you that the cases are that similar. I think they're actually quite different as I'll get into in a moment. No, I understand that. All I'm saying is we know what the background facts in these cases are. Thank you, Your Honor. Your Honor, this is a forged endorsement case. A forged endorsement case is when a bank accepts for deposit an instrument that contains a forged endorsement. And if they do that, they have to show that they acted in a commercially reasonable manner and in good faith. That's always been the law in Georgia. It's always the way I've always understood it. Recently, this line of cases . . . Why was the check endorsed? Wasn't it endorsed the way it was written? No, sir, it was not. In fact, it was endorsed . . . well, I have two part answers to that. The first direct answer to your question is no. The check was made out to Ruth A. Barr, Planned Administrator, TRIRA, FBO, David Bass. Right. It was endorsed Ruth Barr. That's not a proper endorsement on its face. Okay. Your Honor, Oliver Wendell Holmes, Jr. once said, The lifeblood of the law has not been logic, but experience. I have experienced this myself. I worked for one of the biggest firms in town for four years. Then I went to work with Mr. Holley at Parker Hudson for two and a half years. I did banking law all that time. Usually, I was representing banks. Now, I sue banks. I went out on my own in 2004. When I did that, one of the first things you do as a solo practitioner is you learn the economics of law firm practice, which is something you've never learned at a big firm like King and Spalding or Parker Hudson. I can tell you many a time when clients would call me and say, I need your help. I've been sued. I've got two days to file an answer. I'll represent you. Here's my contract. I need a check. I need to make sure that check doesn't bounce. I'd literally go down to the bank many a time. You get down there. My firm, as you see on the pleadings, is the law office of Jason H. Kaufman. In my haste, I did not notice that they wrote Kaufman Law Firm. Let me tell you, folks. It is difficult. It is difficult to get that check into that account. But this says Kaufman Law Firm, but there is no Kaufman Law Firm. It's the law office. They just made a mistake. They mean it this way. Now, several times I was able to get it done, but I can tell you banks know what's going on. Forced endorsement cases, they always turn on discovery. But that's not the dispositive issue with you right now. It is not, Your Honor. Because the district court never got to the merits of your claims, at least with regards to certainly with regards to regions, because the district court found that for your claims you didn't have standing under the UCC and that the UCC preempted any other common law remedies you might have. So you have to prevail on standing issues to get to the forged endorsement issue. Yes, Your Honor. And here's how I can do that. This is a forged endorsement case. UCC in the legislature in 1996, when they adopted this language, never intended to preclude these cases. In fact, it says in there, to the extent we don't provide a remedy, you're not precluded. Why are these types of cases different from the cases that he's going to stand up here and tell you? He's going to say three people or three entities, as the case may be, may sue on this check, the three that are listed. Right? And he's going to quote the UCC. I'm not here under the UCC. I'm here under common law. You know why the legislature says these three people have to proceed under the UCC? Because they have many different duties and they get many different notices. Their statute of limitations, for example, Your Honors, is far shorter than my four-year statute for conversion. You know why? Because you get a monthly statement. I even, these days, I get a copy of my checks. In the old days, I used to get the checks themselves. So I get immediate notice of what's going on in my account. In your garden variety forged endorsement case, it may take years to figure out that there's fraud. The legislature never intended this type of case to go in line with the people who have an issue over a check who are listed on it as a payee. The classic fraud endorsement case, and I cite to this court, and one of the best ones that I think puts to rest any notion that this case is somehow preempted by the UCC, is the Citizens Bank Dallas versus Thornton case. In that case, the plaintiff, Thornton, was to receive checks that were made out to Confederate Insurance Company. Now, its employees absconded with those checks, forged the endorsement, and went to another bank and was able to get away with the funds. By the time Thornton figured out what had happened, and again, the reason he wouldn't know is because he's not getting a bank statement saying, hey, by the way, you know that $50,000 check? It was negotiated over at BB&T the other day. The UCC is going to put you on notice. You've got a year to sue over that or 60 days in some instances. That's why you give a forged endorsement person four years under common law because it's a totally different set of standards. It's also a different set of standards for the bank. They need only show they acted in a commercially reasonable manner and in good faith. Now, in most of the cases where these cases have been thrown out and concluded, they've been purely on UCC grounds. In many of those cases, they did have a claim under the UCC, and I agree you can't state both. Now, perhaps the closest case that one would come before this court was the one I was referencing, Your Honor, was the Midwest Feeders v. Regions Bank case that was argued December, I believe December 13th of 2017. That's a very similar case. I believe it was a forged endorsement case. I will be honest. This court came to a different conclusion and determined that it was, in fact, a case that lacked standing pursuant to the UCC. I would respectfully suggest that that is not the case, that in forged endorsement cases, you fall outside of the UCC, and the legislature never intended for you to have a remedy, and as the Webster case points out, they never intended to preempt it. Your Honor, their next, and again, Judge Jordan, you're correct. She never reached this issue because she didn't have to because of the standing. In dicta, though, she does say that it was a proper endorsement. We vigorously dispute that. I believe in order to properly endorsement, to endorse it, that Ms. Bard needed to add the language that is on the payee of the instrument. We also believe that the case law in Georgia demonstrates, and I've cited the cases in this court, that there is a separate issue of once it was endorsed, I know they're going to say it's bearer paper, but it still was deposited into an account having nothing to do with the payee. That should have alerted the bank. Most of these cases that they're citing were resolved at the summary judgment stage, not here. I've not been able to get discovery in this case. We do believe, though, that once we were able to get discovery, we would be able to demonstrate that the bank was on notice. In this court, in the HSI Chang versus JPMorgan Chase bank case, which you'll find at 845 Fed 3, 1087, it's a 2017 case by this court, found that in certain circumstances, and this is a completely separate argument that would support a claim and a reason for reversing the trial court, that if a bank participates in the negligence, gross negligence, aiding and abetting fraud or conversion, and they do so if they're aware of a fiduciary relationship and they're aware of the potential fraud, we believe in this instance that through its relationship with Ms. Barr, which was a longstanding one, and it's alleged in the complaint, the affidavit of Ms. Leslie Bass, which was added and briefed and included in the amended complaint to add these issues, we believe that they knew of Ms. Barr's poor credit history, the fact that she oftentimes ran over her limit, the fact that she owed Regents Bank's money, and I think that would support an aiding and abetting and a negligence claim and a conversion, potentially a fraud claim, especially if they looked past these issues with the check because they wanted to get the money into the account because she owed them money. You didn't plead a breach of fiduciary duty claim, right? Not in this one, and I was going to close with that, Your Honor. I have 50 seconds, and that's why the case against Fidelity is so different. Obviously, there's no fiduciary relationship from Regents Bank. They were a stranger bank. Real quickly, Your Honor, because I'm almost out of time, we believe that the court erred. The same arguments apply to our banking claims, our forged endorsement claims. There's one other separate claim, as against Fidelity, as a breach of fiduciary duty claim, and we believe that the court erred in dismissing that claim under this case law because it has nothing to do with it. UCC does not intend to preempt fiduciary duty claims. Now, they'll argue that there was no fiduciary duty and that there was no obligation. Well, if that's the case, they had our money. They sent us the check. They made out the check. When the check was absconded with, we called them. They gave us the check. They told us they would investigate, and then after about a year, they told us they weren't going to do anything. If there was no fiduciary relationship, why did they do all those things? I'll yield the remainder of my time. Mr. Hawley. Good morning. May it please the Court, William Hawley for Regions Bank. I will take the first 10 minutes and address the UCC issues. This is a consolidated appeal. The last 10 minutes will be taken by counsel for Fidelity. I agree with Mr. Kaufman, absolutely. This is a forged endorsement case. That's how it was pleaded. That's how it was brought. That's how it should be treated under commercial paper. What's missing is a forged endorsement. This case falls under commercial paper for two completely independent reasons. The first one is a statute that is controlling, but was never briefed by my opponent below or in this court, despite the fact that it turns the issue. The question that's raised is when a check is made payable to a trustee for an IRA, who is it made payable to? And there is a statute that tells banks exactly who to pay. And that statute is 11.3.1.10, UCC 3.1.10, Section C. The title of the statute is Identification of Persons to Whom Instrument is Payable. C says, For the purpose of determining the holder of an instrument, the following rules apply. Section 2. If an instrument is payable to, subsection I, a trust or a state or a person described as a trustee or representative of a trust or a state, the instrument is payable to the trustee, the representative or a successor, whether or not the beneficiary or state is also named. So in commercial paper, when a bank gets a check that is payable in the way that this check is written, and we know that an IRA is a trust, we've cited the federal rule on that, they know that the endorsement that they take is the endorsement of the trustee. In this case, and you'll see the check at page 24 in the record, the trustee was Ruth Barr. Ms. Barr endorsed that check in blank at first. Her signature appears on the top. And as we all know, under UCC commercial paper, that means at that point it became bearer paper. Thereafter, she deposited it, directed deposit into an account that she had an interest. That's well and fine because once it's endorsed by her, it can be endorsed anywhere. At that point, this case is over. The UCC has provided a remedy if it is a forged endorsement, but it's not. And that's why in the footnote, Judge May said this check was properly payable. But there's another reason why this case was dispositively resolved at a motion-to-dismiss level, and I argued the same issue to Judge Choflat in a panel in December of 2017, and that is there is a limited number of persons who can bring a claim on a check. And we may want to debate that, but that is a statutory determination, a compromise that's made within the UCC. And the appellant here was not one of those three people, as was the appellant in Midwest Peters. It was not one of those three people. What cases from Georgia or elsewhere decide that issue on facts like this? Your Honor, we cited in our brief the long history of cases that – They're not like this one. There's not a case in which Section 110 applies. You're correct. There are plenty of cases, though, that talk about if you are not the – Right, the general principle. Correct. Right, I know that, but there are no cases like this one, right? Correct. There is not a case in the trustee context, and that's why when an oral argument was requested, we indicated to this court that we were unaware of a case on this particular issue in this court, although there had been other cases that we cited below. And we believe that Judge May's decision is correct below. We believe that you cannot get around the straight reading of Section 110 or Section 3301. The appellant was not a holder of the check. He did receive the check, but at the time he received the check, it was not payable to him, so he was not a holder. He voluntarily gave the check to his sister-in-law, Ms. Bass, which Judge May noted. That's pleaded. Ms. Bass was named a trustee. His remedy is whatever contractual relationship he had with Ms. Bass. And Judge Stovallat made this point in the oral argument in the Midwest Feeders case, as many courts have before. The mistake that's made here by plaintiffs is that they mistake an interest in the funds that are belying and underlying the check with the check itself. What's at issue here is the way that banks do business. And did the bank, at the instant when it received this check, pay the proper payee? I heard at the end of Mr. Kaufman's argument some reference to things about overdrafts. None of that has been pleaded. None of that was in the complaint against the bank. As Mr. Kaufman said, this is a forged endorsement case. A, there was no forged endorsement, and B, his client is not one of those people who are in the group of people who are allowed to challenge a check. The drawer, the payee, a holder, or if it's a lost and stolen instrument. All of that analysis, the analysis, the first case that was relied upon, Judge Jordan, was the Promisor case, which was a Georgia case for that principle. And Judge Beverly Martin, that was our case. Judge Beverly Martin first enunciated this principle in Georgia. It had been enunciated in several other places, saying that if there is a limit within the UCC, among other things, you don't have these common law claims that are brought in. That's common law preemption. That built upon a series of cases in Georgia, the Dudley case, the Roswell Jeep case. That Promisor case, written by Judge Martin, was the cornerstone to the opinion that was written by Judge Abrams in the Middle District in the Midwest Spears case, a $23 million check forgery case, in which the same principles were applied. And the principle is, if it is a check case that is challenging the negotiation of a check, we have a set of rules that governs that. And those rules are the UCC. And if we start changing those rules, then we change the whole way that commercial paper works. What common law remedies are not preempted by the UCC in Georgia? If it is an issue that is not subsumed within the statute that deals with the check. So in this case, let's, for example, if someone came in and they stole money at the bank, that's not within the UCC. You can have an independent tort. Correct. Where, for example, the bank is a tortfeasor along with somebody else or whatever the case may be. Correct. In which event you don't, in which the banking transaction is just informed and the substance is something else. Correct. And so, Your Honor, the common pleaded claim that's a common law claim is conversion. We had some of those cases that came out of Pensacola or Mobile, I can't recall, had arguments two, three months ago, which were the result of the downturn in 2008, which all sorts of fraudulent, we'll put it that way, conduct on the part of bankers were involved in overriding the transaction. And that could be different. What's alleged here with regard to Regents Bank, Judge Jordan, is that some teller at a counter took a check, looked at the check, accepted the endorsement of the trustee. That's the pleaded facts here. If the facts were different, if the facts were that there was collusion or something else, then we would have a different case. The conversion claim that my learned opponent referenced is absolutely subsumed within the UCC. 3-4-20, conversion of an instrument. And 3-4-20 sets forth the exact law on conversion. In fact, my learned opponent would say that he gets to raise fact issues on commercial reasonableness and others. Those are defenses to conversion if a forged endorsement where a conversion has taken place. But here there was no forged endorsement, so we've not reached any fact issue on the defenses. There is a whole litany of cases that get resolved in the UCC. I'll yield my time in a moment, but I will say, cite to you a case that was in our brief, the American National Insurance Company case. Judge Diane Wood, who's now the Chief Judge of the Seventh Circuit, wrote the opinion. And the reason why I'm going to cite this quote is because I think it encapsulates what's going on here. Any number of these cases that we handle, plaintiffs come in all the time and they say, no, no, no, let's throw away the UCC. Let's find a different way to describe the relationship. Well, if you do that, that thwarts the whole purpose of commercial paper. That's why the UCC exists, so that when that check comes in and that teller sees it, there is a set of rules that allows that check to be negotiated or not negotiated and business to run. This is what Judge Wood said, based upon a similar type argument. This novel interpretation of the familiar draw-er, draw-ee, endorse-ee, pay-ee relationship is unprecedented, and for good reason. It pertains to the fundamental axiom of negotiable instruments that banks must pay the pay-ee. And that's what this case turns on. 113110 says that if it's a trust, the pay-ee is the trustee. This check was endorsed by the trustee. That's it. That's how commercial paper works. Unless there are questions from Regents, I'll yield my time to the Council for Fidelity. Thank you, Your Honors. Thank you, Mr. Hawley. May it please the Court. John Bolus for Fidelity Investments Institutional Services. As the Court recognized in consolidating the Regents and Fidelity cases, there's a great deal of overlap between the two cases since the Bass Estate, through its amended complaint, essentially is seeking the same relief from Fidelity as from Regents based upon the same conduct by Ruth Barr, the sister-in-law of David Bass, depositing a check made payable to her as trustee into a business account. Now, as with the Regents' claim, there's a lack of standing to enforce claims for conversion under the Georgia Commercial Code. And conversion was one of the claims brought in the amended complaint. As with the Regents' claim, there's preemption of the other claims. Since we're talking about what happened once a check that is governed by Article III was issued and accepted by a bank and what liability might result, the common law claims are preempted and Mr. Hawley covered those issues very well. Judge May correctly addressed those issues in her ruling on our motion to dismiss, finding that the estate and this Court properly . . . You issued the check at his request. Yes, sir. In the form that he asked for, I suppose. Exactly. It was based on instructions from Mr. Bass. If the check was made out inappropriately, it was given to him. Yes. As I understand it. Your Honor . . . So he could have said to you, it's wrong or some such thing. Exactly. And we're looking at the complaint, an amended complaint, and we had before Judge May the Regents' complaint as well,  The point I'm making is, which I think is important, is Fidelity gave the check to Mr. Bass . . . Exactly. . . . as opposed to Ms. Barr. Exactly. And Mr. Bass then delivered the check to Ms. Barr after having the ability to review it and make sure that it complied with his instructions. Some of the claims against Fidelity are not preempted by the UCC, right? They may fail on the merits, but if someone like Mr. Bass asks Fidelity on one of his accounts to write a check to X and Fidelity writes it to Y, that claim is not preempted by the UCC, right? You're correct, Your Honor, but that's not the claim that was made. I know it's not, but his claim touches upon, and that's why I'm saying there may be problems on the merits of it, but it touches on the purported negligence of Fidelity in handling his account and the way that it disbursed the check. Why is that claim preempted? Well, the claim that you're articulating is internally inconsistent. It's inconsistent with the remainder of the complaint as amended in this case because there is no allegation that Fidelity failed to follow the instructions of Mr. Bass. The only allegation is . . . The claim, as the district court described it, one, not all, but one of the claims against Fidelity. This is page three of the district court's order. Mr. Bass or the estate of Mr. Bass contends that Fidelity converted the check funds by improperly disbursing them from his account and that Fidelity acted negligently with lack of good faith and failed to exercise ordinary care in handling his account. Your Honor, many of those claims are lifted directly from the region's complaint and have to do with the way a bank in the presentment chain might have dealt with the check. But if you look at the amended complaint in this action, there's no allegation and any allegation would be inconsistent with the statements made in the complaint that Fidelity was instructed to provide the check payable to the IRA administrator and provided that to Mr. Bass who then delivered it to Ms. Barr. In fact, the breach of fiduciary duty claim within the complaint and these are paragraphs 33 and 34 in the complaint say that defendant owed plaintiff a fiduciary duty. This duty included Well, those facts, as I understand, were on summary judgment. Well, summary in the sense of standing. I'm sorry, Your Honor. I mean, what I'm saying is the court ruled on that set of facts regardless of how it was closed. The set of facts being that he instructed Fidelity to bank out a check in a certain way. Fidelity made it out, gave it back to Mr. Bass who accepted it. Correct. So that means Fidelity did what was requested. Exactly. And Judge May was looking at I mean, those are the facts. And Judge May was looking at the facts alleged in the light most favorable to the plaintiff under the 12B6 standard. And based on those facts, there is no Those are the facts that are alleged. Exactly. And those show no failure on the part of Fidelity to follow an instruction or to breach some duty to Mr. Bass. Fidelity didn't participate in the presentment process. It was simply the drawer of the check. And so this gets to the whole point of we believe that these claims are preempted. Even if you get beyond preemption to the merits on a 12B6 analysis, these claims cannot survive and did not survive. Judge May correctly found that. There was no allegation of facts that would support a breach of a contractual duty. And as far as a fiduciary duty claim, those facts were not alleged either. The claims are belied by the statement that Fidelity issued the check in a manner that was instructed by Mr. Bass. I guess the way preemption comes into the case on your side is because there's also a claim, I think, in the amended complaint that Fidelity also acted improperly by ultimately paying the check when it was run through the banking system from Regions and then went to, I guess, Fidelity's drawer bank and then it was paid out without objection from Fidelity. That's essentially how, I guess, from your side, the UCC kicks in and knocks out that sort of claim. Yes, Your Honor. And it certainly would be preempted because the UCC in Article 3 not only covers banks in the presentment process, but also the drawer of a check. 11-3-414 covers what happens when a check that a drawer draws is accepted by a bank and a drawer is discharged from responsibility under 3-414. So you have a comprehensive remedy that's provided by the UCC as adopted in Georgia. And for that reason, preemption applies. So based on the complaint, as framed by the plaintiff in this case, We understand your point. there are no allegations that could survive, and Judge May correctly found on the merits, once you looked at that, that there were no viable claims. We understand your point. Thank you, Your Honor. Mr. Coffman. Your Honor, I'll take Fidelity first because, again, there is an overlap, but they do have distinct duties because we had a relationship with them. We concede that Mr. Hawley's client was a stranger. So he says the claims are preempted. The fiduciary duty claims are not preempted. And, Judge, several times I wrote down, and if I got it wrong, I apologize. It presumably was in the form he asked for, did as he requested. That's a fact question, and she threw us out on standing. But what did you allege in the complaint about that? Your Honor read from page three of the order, we alleged a general allegation that they acted improperly at that point. I believe I should be. As the allegation in the count, factually, what did you allege in the amended complaint that Fidelity did or didn't do? We have two claims as, again, well, we have two, like it's like a Venn diagram, but we have two subsets of claims against Fidelity. We have one subset of claims against. What were the underlying facts? Forget the theories. Correct. Okay, tell me what you allege Mr. Bass did when he went to Fidelity. So the one claim is all you used to see in the preemption. The other claim is they're acting as a fiduciary, and here's what they are, Your Honor, and they are a myriad of things. I don't want to hear what they argued. I want to know what you alleged. You said Mr. Bass went to Fidelity. Mr. Bass was a client to Fidelity. He had money at a Fidelity account. Correct. So far so good, right? Yes, sir. What did Mr. Bass ask Ms. Fidelity to do? He asked them to issue a check so that he could transfer the funds. And is the complaint specific about exactly how he asked for that to be done? It's not something that's been explored, Your Honor. Is the complaint specific on that or not? I know it hasn't been explored in discovery. What is your complaint alleged that Mr. Bass asked for? Your Honor, I do not know that at this point we dispute that issue. We have raised other issues. For example, what they did after we reported the check as being absconded with. They failed to conduct it out of good investigation. They failed to act with reasonable care. They failed to do as promised. But as to what happened would be a fact-intensive inquiry. And what she's done is she said you can't state a case because you don't have standing. And she never gave us the opportunity to explore the very issue that you're asking about. I know. You're talking about you wanted a chance to prove some things that happened after the check went through and they paid it. Or before, Your Honor. Or before. In other words, when we asked them to produce a check, they have a duty to do it in a proper way. I understand. Did they produce the check and give it to him, to Mr. Bass? They did. Okay. Mr. Bass had the check. There's no assertion, if this is your question, there's no assertion that at that point it was improper. But we're entitled to explore that. Well, no. But Mr. Bass had the check in his hand. He did, Your Honor. Okay. And when he gave it to Ms. Barr, his sister-in-law, the inference is inescapable that it was, that Fidelity gave him the check he asked for and then he gave it to her. Your Honor. There's no allegation that disturbs that, is there? Your Honor, I don't dispute that, but you can't kick me out on standing grounds. Okay. Right? Am I right? That's not a standing ground issue. No, no, no. It's a pleading issue and she won't let me do it. No, no, but for my part, I'm trying to figure out where your breach of fiduciary claims against Fidelity come from. And merits wise, I'm speaking only for myself, it is hard to see how Fidelity breached any fiduciary duty at the front end. If your allegation is that Mr. Bass asked for a check written to Ms. Barr, Fidelity complies with that request and gives the check to Mr. Bass. Unless there's something I'm missing, it's hard to see how there's a breach at the front end. I understand your argument about the back end. Right. About paying the check, not objecting, not conducting an investigation. I understand those claims, but I don't understand the front, if there is a front end fiduciary duty claim, I don't understand the basis for it. Your Honor, all I'm saying is this. It's not alleged at this juncture. It could have been. My point is she didn't allow me to do that. If we were here on that issue, I don't think we'd have a problem. I agree we haven't alleged it at this point. You haven't alleged breach of fiduciary duty with the writing and disbursement of the check at the front end. Correct. We've alleged it at the back end. Got it. And we believe that her dismissing us on standing as to that issue of Fidelity is improper. I'm going to move back to the first argument that I think is the central to this case. Is this a forged endorsement case? It is. Your Honors, if the judge is affirmed, you are going to eliminate, and I do mean eliminate, a whole subset of cases that have been brought in Georgia for hundreds of years. This has always been the law in Georgia. If Mr. Hawley's rendition of the law is correct, then your Honor can go to the two cases that I cite that are particularly on point, Tifton Bank, which you'll find at 215 Georgia App 471, and the Citizens Bank v. Thornton case that I discussed earlier. Those cases, they would have been kicked out on standing grounds. Mr. Hawley says it's not a forged endorsement. In the Tipton case, the check was made out to Confederate Insurance Company, not to the plaintiff. It was properly endorsed and deposited into a stranger bank, yet he got a trial and it was affirmed. But that's not a trustee scenario, and that's his argument. And your Honor, his first argument is it was properly endorsed. His second argument is it's a trustee. Well, I got one for that too. The Tipton Bank v. Knight's Furniture, in that case, the plaintiff's attorney got a case, and then he properly endorsed it. Exactly, it was made out, and he had the right to do it as an attorney. But the problem arises, that's also a trustee situation, as is the Chain case that I cited. And what happens in Tipton Bank? The same exact thing. A check is payable to an attorney. Correct. It was paid to the client and the attorney, and the attorney signed for both. That's different, though. That's a joint payee scenario. It is. It is different, but it also is a trustee scenario, and it demonstrates that just because the endorsement might be proper does not mean it's not a forged endorsement case. A forged endorsement case is, even if you do it exactly right, Judge Jordan, and then you turn it around and you put Judge Jordan, it can still be a forged endorsement, even though they're absolutely the same, they're identical, if you didn't have the authority to do it. Right, and so the attorney in Tipton Bank didn't have the authority of the client to do it. Correct, and so the bank was liable, even though they had no reason to know that. The reason that those cases are out there is not because that they were rogue cases. That was always the law. This UCC argument, again, is limited to the situations that they lay out, a holder, a non-holder, or someone. Well, I asked Mr. Hawley the question on another point, but I'll ask it to you here. What is the best case in a trustee scenario, not only from Georgia, from anywhere in the country dealing with the UCC that says something like this can qualify as a forged endorsement? Your Honor, here's what's happened. This is a new line of argument. It hasn't been made. Mr. Hawley may have been willing. That's okay. So there's just nothing out there. It's just new. Correct, but Your Honor, the courts are going his way. You're going to, if he is right. Well, what you're arguing, counsel, is that there's an affirmative obligation on the part of the bank to do an investigation when they see a check like that, to determine whether she can sign it as trustee. If it were made out to her explicitly as trustee for XYZ, and she signed as trustee for XYZ, you still have a case. Correct. Okay. Which means the bank has an obligation to conduct an investigation. They have an obligation to act commercially reasonably and in a good fashion. Which means that the stability in the commercial, I'm an old man. When I went to law school, they called it bills and notes. It came out of the common law. It came out of England. And the law had to be very rigid. Otherwise, you couldn't have commercial transactions. So they had a lot of rules that seemed to be pretty harsh. And that's what the UCC does. The same thing with, it's just bills and notes by statute. Correct. Okay. So you want to, so we're going to have a crack in the stability and have the bank, no. Your argument is the bank was required to do an investigation. And that's not preempted by the UCC. Isn't that your argument? It is, Your Honor. And this is the point I made earlier. So they breach their duty to somebody. Yes. Well, I guess to the maker of the check. The duty had to go to the maker of the check. The duty goes to a person that is an interest in the funds, Your Honor. I understand. But they have a duty to somebody to run an investigation. Now, who do they owe the duty to? Mr. Bass? It would be one of the persons, Your Honor. One of them? He's the one that was the maker of the check. That's not the fact as I understand it, Your Honor. On his face, he was the maker. Was he not? Not to my understanding, Your Honor. The check was requested from Fidelity. Yes. On a Fidelity account. Yes. And it was written by Deutsche Bank or some other bank. I forget the name. Correct. Right? Correct. So, but it was from Mr. Bass' funds. As a matter of fact, it constituted the entirety of his retirement account, right? Yes, Your Honor. Okay. I think we have your case. Thank you. Court will be in recess under the usual order. All rise. Thank you.